In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2796

FIDEL SANTOS MENDOZA,

*Petitioner*,

*v.*

PAMELA J. BONDI,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A216-405-264

ARGUED APRIL 8, 2025 — DECIDED AUGUST 14, 2025

Before HAMILTON, LEE, and MALDONADO, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Federal law gives the Attorney General discretion to cancel removal of an alien who is deportable from the United States if, among other conditions, the alien "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C.

§ 1229b(b)(1)(D); *Wilkinson v. Garland*, 601 U.S. 209, 211–12 (2024). An immigration judge found that petitioner Fidel Santos Mendoza satisfies all the criteria to be eligible for discretionary cancellation of removal except the "exceptional and extremely unusual hardship" requirement. He has petitioned for judicial review of that decision. We find that we have jurisdiction to review at least some of his challenges to the denial. But we also find that Santos Mendoza has not shown any legal error in the finding that his removal would not cause "exceptional and extremely unusual hardship" to his children who are United States citizens. We therefore deny his petition for review.

I.   *Factual Background*

Fidel Santos Mendoza entered the United States illegally in approximately 2006, and he has been here ever since. He and his wife Feliciana have two children, Anthony and Michael, who are both United States citizens by birth. In addition, Feliciana has one child, Brian, from a prior relationship who lives with her and Santos Mendoza and who is also a United States citizen. Brian testified that Santos Mendoza has raised and supported him from an early age and that he considers Santos Mendoza to be his father. If Santos Mendoza is returned to Mexico, his children will remain in the United States with Feliciana.

Santos Mendoza is the family's principal breadwinner. For the past five or six years, he has worked at a factory in Indiana. He makes approximately $3,600 per month and receives health insurance through his employer that covers his entire family. Feliciana also works, but she makes about $1,400 per month. Santos Mendoza's removal would undeniably cause his family financial distress. He believes that if he is returned

to Mexico, he would probably work as a construction worker and make very little money. He does not believe that Feliciana could obtain a better job because she does not have a social security card, and she needs to care for their children.

By all accounts, Santos Mendoza is a good husband and father. Feliciana testified that she had been a victim of family violence in previous relationships and that Santos Mendoza gives her crucial emotional support. She fears managing the household alone, both economically and emotionally. Brian testified that Santos Mendoza is a great man and that his return to Mexico would be difficult on the family. Santos Mendoza himself testified that his younger children, Anthony and Michael, showed symptoms of emotional distress during the removal proceedings. They became disinterested in school and extracurriculars and expressed anxiety about the result of the proceedings, and both were diagnosed with anxiety disorders about a month before the hearing before the immigration judge.

II. *Procedural Background*

After Santos Mendoza was arrested for driving on a suspended license and leaving the scene of an accident that caused property damage, the Department of Homeland Security initiated removal proceedings against him. Santos Mendoza's Notice to Appear charged him with being removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without having been admitted or paroled. At a hearing before an immigration judge on February 7, 2018, Santos Mendoza admitted the allegations contained in the Notice to Appear and conceded that he is eligible for removal. He filed an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1).

On May 14, 2021, Santos Mendoza appeared before an immigration judge for a merits hearing on his application for cancellation of removal. Under section 1229b(b)(1), the Attorney General may cancel the removal of an alien who meets four requirements. He must show (1) continuous physical presence for at least ten years immediately prior to his application; (2) good moral character during that period; (3) no disqualifying convictions; and (4) that removal would result in "exceptional and extremely unusual hardship" for a qualifying relative. 8 U.S.C. § 1229b(b)(1). Qualifying relatives include an "alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." § 1299b(b)(1)(D). The government stipulated that Santos Mendoza had met the requirement of continuous physical presence in the United States. The judge also found that Santos Mendoza met the good moral character requirement and that he did not have any disqualifying criminal convictions. But the judge also found that Santos Mendoza was not statutorily eligible for cancellation of removal because his removal would not cause "exceptional and extremely unusual hardship" to his United States citizen children.

Santos Mendoza appealed the judge's decision to the Board of Immigration Appeals. By the time the Board resolved the appeal, Brian was too old to serve as a qualifying relative because he had reached the age of 21. See 8 U.S.C. § 1101(b)(1). The Board assumed that Brian remained a qualified relative and affirmed the judge's decision based on his dispositive finding that Santos Mendoza did not satisfy the exceptional and extremely unusual hardship requirement. Santos Mendoza then filed this petition for review.

III. *Jurisdiction*

The government first argues that we should dismiss Santos Mendoza's petition for lack of jurisdiction. Our jurisdiction over a petition for review of the Board's decision to deny cancellation of removal is governed by 8 U.S.C. § 1252. Under section 1252(a)(2)(B)(i), we lack jurisdiction to review either the Board's factual findings or a discretionary judgment to deny cancellation of removal to a person who is legally eligible for it. See *Patel v. Garland*, 596 U.S. 328, 347 (2022). We retain jurisdiction, however, to review constitutional claims and other questions of law. 8 U.S.C. § 1252(a)(2)(D). In *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024), the Supreme Court carefully parsed section 1252 as applied to cancellation of removal. The Court held that application of the exceptional and extremely unusual hardship standard to an established set of facts is a "quintessential mixed question of law and fact" and therefore reviewable under section 1252(a)(2)(D) as a question of law.

Santos Mendoza contends in part that the immigration judge's and Board's finding that his removal would not cause exceptional and extremely unusual hardship to his three children who are United States citizens was the product of a legal error. We therefore have jurisdiction over his petition.

The government argues that we lack jurisdiction over Santos Mendoza's petition because his entire argument is premised on disputes with the judge's unreviewable factual findings. As we and our colleagues in other circuits have said repeatedly, "a petitioner can't manufacture a legal dispute over a disagreement on the facts." *Jawad v. Holder*, 686 F.3d 400, 404 (7th Cir. 2012) (collecting cases). We agree that some of Santos Mendoza's arguments amount to disagreements with the

judge's factual findings. We do not entertain those arguments here. Nonetheless, Santos Mendoza's petition presents the reviewable claim that the judge's factual findings show that, as a matter of law, he meets the exceptional and extremely unusual hardship standard. We have jurisdiction to assess that argument.

IV. *The Merits*

Santos Mendoza argues that we should review de novo the judge's and the Board's application of the hardship standard to the facts. We disagree. The Supreme Court has yet to determine the precise standard of review for evaluating the Board's hardship determination, but in *Wilkinson*, the Court explained that the question whether established facts satisfy the hardship standard "requires close engagement with the facts," which "suggests a more deferential standard of review." *Wilkinson*, 601 U.S. at 222. That instruction is clear enough that we will not apply de novo review.

Since *Wilkinson* was decided, circuit courts have engaged in a fairly abstract debate about a precise formulation for the appropriate deferential standard of review. See *Toalombo Yanez v. Bondi*, 140 F.4th 35, 41 (2d Cir. 2025) (collecting cases from First, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits declining to select a precise formulation). The Third and Ninth Circuits have both held that the Board's hardship determination should be reviewed for substantial evidence, as defined by 8 U.S.C. § 1252(b)(4)(B). *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025); *Wilkinson v. Attorney General*, 131 F.4th 134, 140 (3d Cir. 2025) (on remand). The Second Circuit, on the other hand, held that a modestly less deferential standard of review for clear error applies. *Toalombo Yanez*, 140 F.4th at 42.

One can fairly wonder how different the two standards of review might be in actual practice. Both standards of review constrain appellate courts in essentially the same way—by requiring deference to the initial factfinder in the absence of a clear and unmistakable error. We need not choose here between substantial-evidence and clear-error review. Under either standard, there was no reversible error here. See *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985) ("But as so often in dealing with the standard of review, the verbal formulation of the standard may not make much practical difference.").[1]

Turning to the substance of Santos Mendoza's challenge, we must deny his petition "unless any reasonable adjudicator would be compelled to conclude" that his removal would cause exceptional and extremely unusual hardship to his United States citizen children. 8 U.S.C. § 1252(b)(4)(B). Because the Board adopted and affirmed the immigration judge's hardship determination without supplementing his reasoning, we focus our review on the immigration judge's decision. See *Martinez-Baez v. Wilkinson*, 986 F.3d 966, 972 (7th Cir. 2021).

To be eligible for cancellation of removal under section 1229b(b)(1), Santos Mendoza had to show that his removal

---

[1] In addition, we review de novo a petitioner's argument that the immigration judge or Board completely ignored evidence in the record pertinent to his claim. *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012); *Martinez-Baez v. Wilkinson*, 986 F.3d 966, 978–79 (7th Cir. 2021) (granting petition for review where immigration judge ignored evidence of daughter's developmental delay). That is an avenue through which petitioners may receive more "meaningful review," *Toalombo Yanez*, 140 F.4th at 43, than is otherwise available under the substantial-evidence *or* clear-error standards of review.

would cause hardship that "is substantially different from, or beyond, that which would be normally expected from the deportation of an alien with close family members [in the United States]." *Id.* at 975, quoting *Cruz-Moyaho v. Holder*, 703 F.3d 991, 995 (7th Cir. 2012) (alteration in original). The hardship determination is inherently comparative, but "the IJ and Board must consider individual hardships on their own terms—generalizations will not do." *Id.* at 976, citing *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002). The Board considers "the ages, health, and circumstances" of the applicant's qualifying relatives. *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001).

Here, the judge properly considered all the relevant factors and reasonably concluded that Santos Mendoza's removal would not produce hardship substantially beyond that which would be ordinarily expected under these circumstances. First, the judge reasonably concluded that Santos Mendoza's children exhibited anxieties that are alas all too common for a family in removal proceedings. The judge noted that Santos Mendoza's children are generally in good health and that the removal proceedings had not prevented them from attending age-appropriate grades in school, but he did not rely on those facts alone. He acknowledged that the children had been diagnosed with anxiety by a psychologist who evaluated them one month before Santos Mendoza's merits hearing. But he reasonably weighed that evaluation against the facts that none of the children had ever been institutionalized, treated with a form of anti-anxiety medication, or had a history of therapy. The judge further observed that "every family member suffers some level of emotional harm" based on the removal of a loved one and that one would expect an evaluation prepared one month before "the most

stressful single event in immigration proceedings" to report heightened levels of anxiety. That reasonable conclusion is supported by substantial evidence and is not clearly erroneous. We cannot say that any reasonable judge would have to disagree with it.

Regarding financial hardship too, the judge's analysis was supported by substantial evidence and not clearly erroneous. The removal of a primary breadwinner hurts a family financially, but we cannot say that any factfinder would be compelled to find the financial harm here extremely unusual. In addition, the judge found that some of the financial consequences of Santos Mendoza's removal could be mitigated. He cited Santos Mendoza's testimony that he would continue to try and support his children from Mexico. He also relied on the fact that Feliciana has a job. He rejected Santos Mendoza's argument that Feliciana cannot get a better job because she does not have a work permit or driver's license, noting that Santos Mendoza himself had managed to secure a good factory job without either. Given those findings, we cannot say that any reasonable factfinder would be compelled to find that Santos Mendoza's removal would produce financial hardship substantially more severe than the ordinary case. See also *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002) ("economic detriment alone is insufficient to support even a finding of extreme hardship," which is a lower standard than "exceptional and extremely unusual hardship").

We do not intend to minimize the severity of the financial and emotional harm that Santos Mendoza's removal will cause his family. It is an unfortunate reality that these consequences are common in these cases. See *Arreola-Ochoa v. Garland*, 34 F.4th 603, 610 (7th Cir. 2022). But the immigration

judge's hardship determination did not amount to a legal error. The petition for review is DENIED.